UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|   |   |
|---|---|
| MICHELLE C. ZEITER, individually and as Special Administrator for the Estate of Michael Buchna, and JENNIFER C. BEAM, individually and as Special Administrator for the Estate of Michael Buchna,<br><br>        Plaintiff,<br>    v.<br><br>WALMART INC. and WALMART STORES, INC.,<br>        Defendants. | Case No. 2:21-cv-00061-ART-DJA<br><br>ORDER ON MOTION FOR RECONSIDERATION (ECF No. 191) |

On April 29, 2025, Judge Gordon recused himself from this action (ECF No. 185.) Defendants filed the present Motion for Reconsideration of the Order on Motion to Strike (ECF No. 157) and Order on Motion for Summary Judgment (ECF No. 168) on June 4, 2025, arguing that Judge Gordon clearly erred when he found that Defendants could have reasonably foreseen litigation and intentionally deprived Plaintiffs of video evidence under Rule 37(e)(2). (ECF No. 191.) Plaintiffs responded. (ECF No. 192.) Defendants replied. (ECF No. 193.)

The Court reconsiders Judge Gordon's application of Rule 37(e)(2) in light of *Gregory v. State of Montana*, 118 F.4th 1069, 1078 (9th Cir. 2014), adjusts the sanction, and vacates the Order on the Motion for Summary Judgment. (ECF No. 168.)

## I.    Factual and Procedural Background

The Court adopts Judge Gordon's factual findings in full and does not restate them all here. (ECF No. 157.) Defendants' motion does not challenge any findings of fact.

Michael Buchna fell outside the front entrance of a Walmart store in Las

1

Vegas in February, 2019. On January 12, 2021, Mr. Buchna sued Defendants Walmart Inc. and Walmart Stores, Inc., for negligence and negligent hiring, training, supervision and retention. (ECF No. 1.) Mr. Buchna died in August 2021, and his daughters and administrators of his estate, Michelle Zeiter and Jennifer Beam, substituted as plaintiffs. (ECF Nos. 15, 27 at 2, 8.) They filed an amended complaint that added a claim for wrongful death on March 3, 2022. (ECF No. 27.)

### a. April 2023 Motion to Strike

Plaintiffs filed a Motion to Strike Defendants' Answer on April 7, 2023, for spoliation and discovery misconduct. (ECF No. 118.) They alleged Defendants intentionally failed to preserve the store's surveillance video and produced no incident report, took no photos, and obtained no witness statements in order to deprive Plaintiffs of evidence to support their claims, and that Defendants engaged in discovery misconduct and disobeyed court orders by refusing to disclose evidence, such as contact information for Walmart employees working at the time of the incident, Mr. Buchna's receipt, and repair reports for the area where he fell. (*Id.*) Defendants argued that any sanctions based on the failure to preserve video must be based on Rule 37(e), and not the Court's inherent authority, because it is electronically stored information ("ESI"). (ECF No. 122.) They also argued that there is no basis to conclude that the video would have captured the fall or that Defendants purposefully failed to preserve the video in anticipation of litigation, and that its erroneous assertions that no Walmart employee knew of the incident should have been clarified to specify employees on the clock. (*Id.*)

Judge Gordon held a two-day evidentiary hearing on the Motion to Strike. (ECF Nos. 153, 155, 182, 183.) He granted the motion in part, finding that Defendants intentionally failed to preserve the video in anticipation of litigation to prevent Plaintiffs from obtaining the evidence, that Defendants engaged in an

intentional course of discovery misconduct aimed at obstructing Plaintiffs from identifying witnesses and obtaining documentary evidence to support their claims, including defying multiple court orders to turn over information that Defendants' witness testified was easily obtainable. (ECF No. 157 at 3.) Judge Gordon imposed a sanction precluding Defendants from disputing that (1) a hazardous condition on its property caused Mr. Buchna to fall and injure himself, (2) that Defendants had notice of the hazard and failed to remedy it, and (3) that Mr. Buchna was not comparatively negligent. (*Id.*)

### b. July 2024 Motion for Summary Judgment

Plaintiffs then moved for summary judgment on the issues of liability and causation on July 19, 2024. (ECF No. 159.) Judge Gordon granted the motion as it related to causation based on his spoliation order but denied the motion as it related to the causation for all of Mr. Buchna's medical conditions and eventual death because of genuine disputes of material fact. (ECF No. 168 at 4.) He held that while Defendants cannot argue that Mr. Buchna's fall and laceration to this scalp was caused by a medical condition, they could argue that Mr. Buchna's pre-fall medical conditions and lifestyle choices caused or contributed to his complications, treatment, and death. (*Id.*)

Over nine months later, Defendants moved for reconsideration.

### II.   Legal Standard

### a. Motion for Reconsideration

Federal Rule of Civil Procedure 60 governs relief from an order. Fed. R. Civ. P. 60(b). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also* LR 59-1(a). A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by

it to be sufficient[,]" so long as it has jurisdiction. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). A motion for reconsideration "should not be granted, absent highly unusual circumstances," and must be brought within a reasonable time. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); LR 59-1(c); Fed. R. Civ. P. 60(c)(1).

### III.   Analysis

Defendants present several reasons why they believe this Court should reconsider Judge Gordon's order imposing Rule 37 sanctions and precluding Defendants from disputing their liability for Plaintiff's fall: (1) Judge Gordon's recent recusal may warrant his rulings to be vacated and reconsidered; (2) Judge Gordon failed to meet the exacting specific intent standard under Rule 37(e)(2); (3) Judge Gordon's Rule 37(e) sanction was improper in light of *Gregory*; (4) Plaintiff's daughter's testimony was inadmissible hearsay; (5) violations of corporate policy requiring preservation do not create a duty to preserve for litigation; (6) a reasonable party in the same factual circumstances would not have reasonably foreseen litigation; (7) statements attributing the fall to medical causes are reliable; and (8) the Court failed to consider the extreme prejudice to Defendants when it issued its order. (ECF No. 191.) Defendants argue that for these reasons, the Court should vacate Judge Gordon's orders striking Defendants' Answer in part (ECF No. 157) and entering summary judgment in Plaintiffs' favor (ECF No. 168.)

The Court organizes these objections around preliminary issues of Judge Gordon's recusal and hearsay, Judge Gordon's application of Rule 37(e), and challenges to the severity of sanctions. Defendants do not appear to dispute Judge Gordon's sanctions based on his inherent authority and Rule 37 generally for discovery misconduct, and therefore, the Court will not revisit that portion of

his decision.

### a. Judge Gordon's Recusal

Defendants argue that Judge Gordon's recusal may warrant a reconsideration of his orders because it is unclear when the circumstances requiring recusal arose and whether they existed at the time Judge Gordon entered his order. (ECF No. 191 at 16.) There is no requirement in the recusal statute that a judge vacate his prior orders when he recuses himself. 28 U.S.C. § 455. The Court finds this is not a ground under which to reconsider the order.

### b. Use of Inadmissible Hearsay

Defendants argue that Judge Gordon improperly relied upon statements that Mr. Buchna's daughters made to Walmart employees to determine that Defendants could have reasonably foreseen litigation and therefore had a duty to preserve ESI. (ECF No. 191 at 23.) They argue that Federal Rule of Evidence 801(d)(2)(D), which admits statements made by a party's agent or employee on a matter within the scope of that relationship and while it existed, is not applicable because no foundation was laid as to any of the evidence's relationship to a matter within the scope of that agent's employment. (ECF No. 191 at 23-24.) Plaintiffs counter that Defendants surrendered this objection by failing to raise it at the evidentiary hearing, or in the alternative, that FRE 801(d)(2(D) applies. (ECF No. 192 at 18-19.)

A failure to raise a hearsay objection until the close of a direct examination constitutes a waiver of the objection. *U.S. for Use & Benefit of Remtech, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 234 F.3d 1278 (9th Cir. 2000). In this case, Defendants did not challenge the alleged hearsay either at the evidentiary hearing nor until this motion was filed over nine months later. The Court therefore finds this objection waived.

### c. Application of Rule 37(e)

The Court's power to sanction for spoliation is derived from its inherent

authority, Federal Rule of Civil Procedure 37, or Federal Rule of Civil Procedure 37(e) for electronically stored information ("ESI"). *See Gregory v. State of Montana*, 118 F. 4th 1069, 1078 (9th Cir. 2024). Rule 37(e)(1) precludes reliance on the Court's inherent authority to sanction. *Id.* at 1080.

Rule 37(e) provides:

If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. 9. 37(e).

As a threshold matter, the Court must find that the ESI should have been preserved in anticipation of litigation, that Defendants failed to take reasonable steps to preserve it, and that video cannot be restored or placed. If these are met, the Court must make the specified findings required by paragraphs (1) or (2) before it imposes a sanction. *See Gregory*, 118 F.4th at 1078.

Under Rule 37(e)(1), a court may order sanctions "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Under Rule 37(e)(2), court may impose more severe sanctions, either (1) "presum[ing] that the lost

6

information was unfavorable to the party," (2) "instruct[ing] the jury that it may or must presume the information was unfavorable to the party," or (3) "dismiss[ing] the action or enter[ing] a default judgment," but only "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

Defendants challenge two elements of Judge Gordon's conclusion on spoliation: first, that Defendants had notice and a duty to preserve ESI ahead of litigation, and second, after concluding that Defendants should have known it needed to preserve the video, that they acted with the specific intent to deprive the opposing party of that evidence.

### i. Anticipation of Litigation

The parties agree that the surveillance video at issue is ESI subject to the Rule 37(e) standard, that Defendants failed to take steps to preserve the video, and that the video cannot be restored or replaced through additional discovery. Therefore, the Court turns to whether Defendants reasonably foresaw litigation. "[W]hether litigation is reasonably foreseeable is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 464 (D. Ariz. 2020). This is an objective standard. *See Small v. University Medical Center*, No. 2:13-cv-0298-APG-PAL, 2018 WL 3795238, at *58 (D. Nev. Aug. 9, 2018) (citing *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (9th Cir. 2011)). The Court finds that Judge Gordon did not clearly err when he found that a party in the same circumstances would have reasonably foreseen litigation.

Defendants suggest that Judge Gordon erred in finding that litigation was reasonably foreseeable because risk of litigation does not arise merely because a tort might have occurred, the medical evidence available establishes that litigation was not probable, and that any alleged policy of video preservation is

not evidence of a duty to do so in a particular legal dispute. (ECF Nos. 191 at 25, 194 at 5-7.)

This is not a situation where the injury itself was the only hint of anticipated litigation. *See Garcia v. United States*, No. EDCV 13-0112-TJH (DTBx), 2014 WL 12709430, at *2 (C.D. Cal. Sept 3, 2014) ("the fact that a tort might have occurred cannot be itself sufficient to place a defendant on notice of impending litigation"); *see also Galicia v. Nat'l R.R. Passenger Corp.*, No. CV 17-8020-JFW (JCX), 2018 WL 6314191 (C.D. Cal. July 20, 2018) (same); *Sanchez v. Washington*, No. 3:23-cv-01994-LK, 2024 WL 4665567, at *9 (W.D. Wash. Nov. 4, 2024) (same). Judge Gordon found that in addition to the severity and extent of Mr. Buchna's injuries, his family asked to see the video two times within the week of his fall, his daughters interrogated Walmart employees about what happened, and Walmart had mandatory policies for reporting injuries and preserving video for all incidents involving an medical incident that would have put a reasonable person on notice that the video should be preserved in advance of litigation. (ECF No. 157 at 7, 22.)

In *Gregory*, the Court concluded that the footage should have been preserved for litigation because the State had actual knowledge of its obligation to preserve the footage in connection with the plaintiff's misdemeanor criminal case, and it was foreseeable that civil litigation could arise from an incident of excessive force in the parking lot. *Gregory*, 118 F.4th at 1078. Here, Walmart had a policy that all incidents must be reported by a member of management within 24 hours, "regardless of how the incident occurred or who is perceived to be at fault." (ECF No. 118-2 at 424.) It also states that it is the responsibility of management to call every customer involved in an incident and immediately notify the claims administrator if a customer has sought medical treatment. (*Id.* at 425.) The Advisory Notes to Rule 37(e) indicate that a party's own information-retention protocols may be relevant to determining whether a party should have

preserved information relevant to litigation. Fed. R. Civ. P. 37(e)(1), Advisory Committee Notes to 2015 amendment. *See also Lopez v. Cardenas Market*, No. 2:21-cv-01915-JCM-BNW, 2023 WL 3182658 (D. Nev. May 1, 2023) (duty to preserve for litigation reasonably foreseeable where defendant had a policy to take photos of area of fall and faced hundreds of civil actions each year). Defendants were clearly aware of an obligation to preserve footage for its claims administrator, demonstrating actual knowledge of foreseeable litigation.

The failure of EMTs or Sangria Vann to investigate and document a hazard such as a slippery substance does not undercut Judge Gordon's findings that Defendants anticipated litigation. (ECF No. 191 at 27; ECF No. 194 at 8, citing ECF No. 191-12.) While Defendants claim that this demonstrates that witnesses and EMTs considered it a "purely medical episode," Judge Gordon observed that "not a single Walmart employee" actually testified to that effect. (ECF No. 157 at 22.)

Given the fact that a determination foreseeability of litigation is a discretionary, flexible, and fact-specific injury, the Court finds that Judge Gordon did not clearly err when he found that Defendants reasonably should have known that they needed to preserve the video in anticipation of litigation.

### ii.  Prejudice from the Loss of Information Under Rule 37(e)(1)

Under Rule 37(e)(1) a court may "order measures no greater than necessary to cure the prejudice" but only if such measures are based "upon finding prejudice to another party from loss of the information." The Court has significant discretion in determining what measure satisfies this standard. *See* Fed. R. Civ. P. Rule 37 Advisory Committee Notes to the 2015 Amendment. In effect, Rule 37 requires the Court to quantify the prejudice caused by the spoliation to determine the sanctions that would be appropriate. *Id.* "Care must be taken, however, to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent

to deprive another party of the lost information's use in the litigation." *Id.*

Judge Gordon found that Plaintiffs were significantly prejudiced by the video's destruction because no one witnessed the fall, and the failure to produce the video, pictures, and repair reports leaves questions about the concrete's condition during the relevant time. (ECF No. 157 at 26.) This evidence would have gone directly towards whether Mr. Buchna fell as a result of a hazardous condition on the property. Defendants appear to concede that if litigation was anticipated that Plaintiffs would be prejudiced by the by the loss of ESI. The Court agrees that Judge Gordon did not clearly err when he made a finding that the destruction of the video would prejudice Plaintiffs such that sanctions under Rule 37(e)(1) are appropriate.

### iii.   Specific Intent to Deprive Opposing Party of Video Under Rule 37(e)(2)

To impose the more severe sanctions available under Rule 37(e)(2), the Court must find that Defendants "acted with the intent to deprive another party of the information's use in litigation." Fed. R. Civ. P. 37(e)(2). *Gregory,* which was decided after Judge Gordon's sanctions order, clarified that Rule 37(e)(2) requires specific intent to deprive another party of ESI. *Gregory,* 118 F.4th at 1280. Defendants argue that Judge Gordon improperly determined that loss of evidence was willful because he merely excluded the possibility that it was due to negligence. (ECF No. 194 at 9.)

Intent to deprive "is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones,* 95 F.4th at 735. A district court must make clear findings of specific intent to justify severe sanctions. *Gregory,* 118 F.4th at 1080. Advisory Committee Notes further clarify that findings of negligence or gross negligence are insufficient to order an adverse instruction sanction pursuant to Rule 37(e)(2). Fed. R. Civ. P. 37(e)(2), Advisory Committee's Notes to 2015

10

Amendment. A district court may consider circumstantial evidence to determine intent such as "the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Vallen v. Albertson's LLC*, No. 2:24-CV-2155-EJY, 2026 WL 207360 (D. Nev. Jan. 26, 2026) (quoting *Jones v. Riot Hospitality Group LLC*, 95 F.4th 730, 795 (9th Cir. 2024)). Upon finding an intent to deprive, a court may impose the sanctions listed in Rule 37(e)(2) regardless of whether there is prejudice. *See* Fed. R. Civ. P. 37(e)(2).

In *Gregory*, the Ninth Circuit found that the district court improperly relied on its inherent authority when ordering an adverse jury instruction as a sanction under Rule 37(e)(2). 118 F.4th at 1079. The district court in *Gregory* found that the spoliation arose from the state's reckless failure to preserve video evidence, and granted sanctions without making findings of specific intent as described in *Jones. Id.* Defendants argue that Judge Gordon's did the same here, by inferring specific intent to deprive based on Walmart employees' failure to recall the incident or produce an incident report, which instead amounts at most to recklessness. While Judge Gordon did not rely on his inherent authority in ordering the sanction in this case, he did infer willful intent despite an absence of evidence indicating an intent to destroy or deprive, like the district court in *Gregory*.

Judge Gordon concluded that Defendants acted with the intent to deprive the opposing party of the information for litigation because he found it "implausible" that two employees would neglect a requirement that "everyone described as mandatory," and therefore there was "no reasonable explanation" for allowing the surveillance video to be deleted "other than the intent to deprive." (ECF No. 157 at 21-24.) It is undisputed that Walmart employees are required to file an incident report if there is a serious medical condition that demands an ambulance. (ECF No. 182 at 18:5-25.) Once the incident report is filed, a manager is required to request a video of the incident. (*Id.* at 20:22-21:4.) Employees

responsible for these reports at the scene do not dispute that they responded, but none of them claim to recall the incident or why a report triggering video preservation was not filed, and no explanation has ever been offered as to why. (ECF 157 at 23.) While Defendants clearly failed to preserve video footage, the record fails to show that they acted with specific intent to deprive Plaintiffs of that valuable information. "Lack of clarity is not enough for the Court to find that Defendant intentionally destroyed footage." *Doumat v. Target Corporation*, No. 2:23-cv-01231-RFB-DJA, 2026 WL 183797, at *3 (D. Nev. Jan. 22, 2026); *see also Comair Ltd. v. Boeing Co.*, No. C23-176 RSM, 2025 WL 472724, at *6 (W.D. Wash. Jan. 14, 2025) ("mysterious" discovery conduct "more likely than not [fell] into the category of reckless or negligent behavior" and therefore severe sanctions not warranted).

In light of the specific intent to deprive standard explicated in *Gregory*, 118 F.4th at 1080, this Court concludes that the record here does not support Rule 37(e)(2) sanctions.

### d. Defendants Do Not Challenge Ruling on Discovery Misconduct

Judge Gordon separately concluded that sanctions were warranted for Defendants' pattern of willfully obstructive discovery misconduct in this case under Rule 37(b) and his inherent authority. (ECF No. 157 at 24.) The Defendants do not dispute this conclusion, and the Court does not revisit those findings.

Failure to comply with a court order is sanctionable under Rule 37(b)(2) and includes "directing that the matters in embraced in the order or other designated facts be taken as established for purposes of the action" or "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii).

As of Judge Gordon's order, Defendants had still failed to comply with a court order by Judge Albregt to produce the receipt of Mr. Buchna's purchases

and the repair orders, and with Judge Gordon's order to prepare and send a letter to the plaintiffs identifying each employee who was working at the Walmart store at the time of the accident, their job title and duties, and contact information. Judge Boulware had already threatened sanctions, and Defendants continued to not comply. (ECF No. 157 at 27.) Judge Gordon found that Defendants' behavior demonstrated willful misconduct, edging on bad faith. *See In re Napster,* 462 F. Supp. 2d at 1060; *see also, Peschel v. City Of Missoula,* 664 F. Supp. 2d 1137, 1146 (D. Mont. 2009).

### e. Appropriate Sanction Under Rule 37(b) and Rule 37(e)

Judge Gordon found that Defendants were subject to sanction under both Rule 37(b) and Rule 37(e). Rule 37 sanctions must be applied diligently both "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *NHL v. Metro Hockey Club,* 427 U.S. 639, 643 (1976). A court "has great latitude in imposing sanctions for discovery abuse." *Dahl v. City of Huntington Beach,* 84 F.3d 363, 367 (9th Cir. 1996). The distinction between Rule 37(b) and (e), however, is crucial to the appropriateness of the sanction in this case.

While Judge Gordon clearly separated his findings on whether sanctions were appropriate between the application of Rule 37(e), Rule 37(b), and his inherent authority, his final order relied upon all of the violations to come to a final disposition. The Court is sensitive to the fact that having found that Judge Gordon clearly erred by concluding that Defendants acted with the specific intent to deprive under Rule 37(e)(2), the harsher sanctions for the destruction of surveillance video are no longer available. The Court, however, still finds Defendants' misconduct in the discovery process severe and sanctionable.

Rule 37(e)(1) provides a "quite broad" range of measures to cure the prejudice if necessary, including forbidding the party that failed to preserve

information from putting on certain evidence, permitting parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument. Fed. R. Civ. P. 37(e)(1), Advisory Committee Notes to the 2015 Amendment. Striking pleadings related to, or precluding a party from offering any evidence in support of, the central or only claim or defense in the case is inappropriate under 37(e)(1). (*Id.*) Having found that Plaintiffs are "significantly prejudiced" by the destruction of the video because no one witnessed the fall, the Court finds that more severe sanctions under Rule 37(e)(1) should apply. Therefore, Plaintiff is permitted to present evidence and argument to the jury demonstrating that video surveillance from cameras on the exterior of Walmart would have captured Mr. Buchna's fall and the condition of the concrete. Defendants and their witnesses conceded that the surveillance video would have likely captured the alleged incident and that the camera was working that day. (ECF No. 118-2 at 158; ECF No. 157 at 22.) Walmart had a duty to retain surveillance footage of the incident, but none was retained depriving Plaintiff of the ability to use the footage at trial that may have assisted the jury in its evaluation of this case. *See Vallen,* 2026 WL 207360, at *11 (granting similar sanction under Rule 37(e)(1)).

Rule 37(b)(2)(A) also allows a court to impose a variety of discovery sanctions on a disobedient party, including:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 27(b)(2)(A). Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion. First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001). Sanctions must bear a reasonable relationship to the subject of discovery that was frustrated by the sanctionable conduct. *See id.*

Before granting terminating sanctions against Defendants for disobeying multiple court orders, Judge Gordon weighed five essential factors under Ninth Circuit precedent: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir.2007). Because "factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, ... [factors] 3 and 5, prejudice and availability of less drastic sanctions, are decisive." *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir.1998). Dismissal or default judgment is a "drastic" sanction that may only be invoked if the party's noncompliance is due to "willfulness, fault, or bad faith." *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997). Defendants only dispute whether Judge Gordon considered the availability of less drastic sanctions. (ECF No. 191 at 29.)

Under Rule 37(b), Judge Gordon found that Walmart's failure to produce physical photos or repair reports was willful, opening the door to terminating sanctions. *See In re Exxon Valdez,* 102 F.3d 429, 432 (9th Cir. 1996). Defendants

do not challenge this conclusion. The lack of evidence leaves questions about the concrete's condition during the relevant time. (ECF No. 157 at 26.) Because Walmart refused to produce evidence that would have proven the condition the of the concrete in front of the store under Rule 37(b), the Court maintains Judge Gordon's sanction preventing Defendants from disputing that there was a hazardous condition in front of the store, and that Defendants had notice of that hazard and failed to remedy it.

## IV.    Conclusion

It is therefore ordered that Defendants Motion for Reconsideration of the Court's Orders of Sanctions and Summary Judgment (ECF No. 191) is GRANTED IN PART.

It is further ordered that the Order on the Motion for Summary Judgment (ECF No. 168) is VACATED.

Defendants will be precluded from disputing that there was a hazard on its property, and that they had notice of that hazard and failed to repair it. Defendants are permitted to dispute the cause of Mr. Buchna's fall.

Plaintiffs may present evidence and argument that the video surveillance footage would have captured Mr. Buchna's fall, that Defendants had a duty to retain that footage, and that they failed to do so.

The parties will have until April 30, 2026, to file a renewed Motion for Summary Judgment, if they choose to do so.

Dated this 31st day of March, 2026.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

16